IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 1, 2024

### IN RE TAD F.[1]

**Appeal from the Juvenile Court for Anderson County**
**Nos. J-37118, 23-0372     Timothy G. Elrod, Judge**

_____

### No. E2023-01626-COA-R3-PT

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial, the court found that clear and convincing evidence existed to establish the following statutory grounds of termination: (1) abandonment by failure to visit; (2) substantial noncompliance with the permanency plans; and (3) failure to manifest an ability and willingness to assume custody of the child. The court also found that termination was in the best interest of the child. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and JEFFREY USMAN, J., joined.

Lindsey Michelle Phillips, Clinton, Tennessee, for the appellant, Haleigh F.

Jonathan Skrmetti, Attorney General & Reporter, and Katherine P. Adams, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

Christine Dummer, Knoxville, Tennessee, guardian ad litem for the minor child, Tad. F.

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

# OPINION

## I.    BACKGROUND

Tad F. ("the Child") was born to Haleigh F. ("Mother") and Matthew S. ("Father") (collectively "the Parents") in August 2019.[2]  The Child lived with Mother and Father following his birth.

On November 23, 2021, the Tennessee Department of Children's Services ("DCS") received a referral alleging drug exposure, domestic violence exposure, and a lack of supervision.  DCS finally located the Parents on December 6, at which time they admitted methamphetamine use.  The Parents agreed to bring the Child to the DCS office, where Mother tested positive for methamphetamine and heroin.  A non-custodial permanency plan was developed with their participation based upon their agreement to complete an alcohol and drug assessment on December 9.  The Parents failed to complete the assessment, but they agreed to place the Child with the maternal grandmother, Telina F. ("Grandmother").  A protective custody order was entered on December 20 documenting the transfer of custody.

On April 19, 2022, the Child was adjudicated dependent and neglected based upon drug exposure, domestic violence concerns, and lack of supervision.  On May 9, the Child was removed from Grandmother's care due to a lack of supervision and drug exposure.  Grandmother tested positive for fentanyl.  The Child was then placed in a foster home, where he has safely remained during the pendency of this action.

As pertinent to this appeal, DCS developed three permanency plans for Mother with the following requirements:  (1) pay child support; (2) complete an alcohol and drug assessment and a mental health assessment, follow recommendations, and sign releases for DCS to monitor progress; (3) submit to and pass random drug screens and pill counts; (4) complete a parenting assessment and sign a release for DCS to monitor progress in that assessment; (5) participate in family therapy and follow recommendations from the therapist; (6) complete domestic violence classes and sign a release for DCS to monitor progress; (7) resolve any legal charges and not incur any new charges; (8) provide proof of driver's license, valid registration, and proof of insurance, or a written copy of her transportation plan; (9) provide proof of stable, legal income; (10) provide proof of appropriate housing and documentation of any individuals living in the home; (11) submit to home visits; and (12) attend regular visitation.  Mother was aware of the requirements and had been advised of the criteria and procedures for termination of her parental rights.  Mother was granted supervised visitation twice per month.

---

[2] Father was not listed on the birth certificate.  Mother identified him as the putative father. His paternity was established by court order.

On April 4, 2023, DCS petitioned to terminate Mother's parental rights to the Child based upon the following statutory grounds: (1) abandonment by failure to visit; (2) substantial noncompliance with the permanency plans; and (3) failure to manifest an ability and willingness to assume custody of the child.[3]

The case proceeded to a hearing on September 28, 2023. Gabriella Rimmer, a DCS employee, testified that she served as the Child's foster care manager throughout the custodial episode. She recalled that Mother provided a completion certificate from a drug treatment program in Lebanon, dated September 29, 2022. Mother completed her parenting assessment and attended parenting classes, anger management, and some domestic violence education. She provided a valid driver's license and car registration and insurance in another person's name. She also provided a current paystub from Amazon.

Ms. Rimmer agreed that Mother submitted to random drug screens, with a positive screen for benzodiazepines, alcohol, and THC in April 2022, two positive screens for buprenorphine in May 2022, and one positive screen for buprenorphine in October 2022. Mother claimed that she was prescribed the buprenorphine as part of the treatment program; however, she was unable to provide a valid prescription. Ms. Rimmer stated that Mother provided screenshots of her prescription bottles but that she was unable to confirm the prescription with the treatment program because Mother failed to sign a release of information. Mother also failed to submit to hair follicle or nail bed testing in January 2023. She later submitted to the testing in March 2023 with a negative result and in June 2023 with a positive result for methamphetamine. Ms. Rimmer explained that the test will report a positive for drug use over the past six months. However, the test does not indicate when in the past six months the use occurred. She stated that despite Mother's completion of the treatment program and several negative tests, she was concerned that Mother was also under the influence at the present hearing.

Ms. Rimmer testified that she attempted to maintain contact with Mother but that Mother ceased communications after she entered a halfway house. Mother also failed to visit the Child in the four months prior to the filing of the termination petition. Mother did not visit from January 18, 2023, through April 4, 2023. Prior to the January 2023 visit, Mother visited once on August 28, 2022, and again on October 7, 2022. She agreed that Mother was housed in a treatment program for some time but asserted that Mother had been discharged on September 29, 2022, well before the pertinent time period. She acknowledged that Mother has visited more consistently after the filing of the termination petition and that the visits were appropriate. Mother has also resumed contact with DCS.

Ms. Rimmer testified that Mother currently lives with her female paramour, who has similar substance abuse issues and custodial issues due to drug exposure and

---

[3] DCS also petitioned to terminate Father's parental rights. His rights were ultimately terminated. He does not appeal the termination and is not a party to this appeal.

environmental neglect. The paramour tested positive for THC and buprenorphine in June 2023. Ms. Rimmer provided that the Child has been living in the same foster home since May 2022, where he appears "very bonded to his foster family."

Foster Mother confirmed that the Child has bonded with her husband and their children. The Child never mentions Mother and cannot identify her in his family picture albums provided by Mother. She stated that the Child has an Individualized Education Program at his preschool and that she and her husband attend the necessary meetings to ensure his progress. Mother was invited to one such meeting but failed to attend via telephone. Foster Mother stated that the Child also attends therapy.

Mother testified that Father was abusive toward her and that she chose to finally leave in April 2022. She entered a drug treatment program and remained there from April through September 16, 2022. While there, she completed her parenting classes, and attended anger management, therapy, and additional meetings to help with her addiction. She has since fulfilled her domestic violence coursework, and she continues in therapy on a weekly basis. She has a prescription for suboxone to assist her in the withdrawal process, and she claimed that she would only test positive for buprenorphine if tested at the hearing.

Mother stated that she has lived in the same apartment with her paramour for approximately three months. She claimed that the apartment was fit for the Child but that DCS had yet to visit. She is also currently employed 40 hours per week with an hourly wage of $19.75 and has access to transportation through her paramour. Her child support obligation is withheld from her wages. As for visitation, she explained that she was unable to visit while in the treatment program and that she had some transportation issues upon her release to the halfway house. However, she has visited the Child at least once a month since April 2023. She admitted that the Child was bonded with his foster family and agreed that he should not be taken from them. She expressed her love for him and stated,

> If I did start gaining custody back, I would want it to be gradual and I still wouldn't want to take him away from them completely. As I said before, I would just like to be able to see him more often.

Following the hearing, the court issued a final order in which it found that the evidence presented established the statutory grounds alleged. The court also found that termination of Mother's rights was in the best interest of the Child. This appeal followed.

## II.     ISSUES

We consolidate and restate the issues pertinent to this appeal as follows:

A.      Whether clear and convincing evidence supports the trial court's finding of statutory grounds for termination.

B.      Whether clear and convincing evidence supports the trial court's finding that termination was in the best interest of the Child.

## III.     STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652–53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d

838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523–24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). "Thus, this court gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359t, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV. DISCUSSION

### A.

As indicated above, the trial court granted the termination petition based upon the following statutory grounds: (1) abandonment by failure to visit; (2) substantial noncompliance with the permanency plans; and (3) failure to manifest an ability and willingness to assume custody of the Child. Mother concedes the trial court's finding of clear and convincing evidence supporting each ground of termination. Mother only objects to the court's best interest finding. Before proceeding to the best interest analysis, we will consider each ground as required by our Supreme Court. *In re Carrington H.*, 483 S.W.3d at 525–26 ("[T]he Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.").

### 1. Abandonment by failure to visit

Parental rights may be terminated for abandonment when a parent fails to visit a child for a period of four consecutive months immediately before the filing of a petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). A failure to visit "means the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). The statute requires that parents offer their children more than "token visitation," defined as visitation that "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

A parent may assert as an affirmative defense pursuant to Tennessee Rule of Civil Procedure 8.03 that his or her failure to visit was not "willful." Tenn. Code Ann. § 36-1-102(1)(I). The burden is on the parent asserting the affirmative defense to prove by a preponderance of the evidence that his or her failure to visit was not willful. *Id.*; *In re Kolton C.*, No. E2019-00736-COA-R3-PT, 2019 WL 6341042, at *5 (Tenn. Ct. App. Nov. 26, 2019).

Here, the petition was filed on April 4, 2023. The relevant four-month period is from December 4, 2022, through April 3, 2023. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (statutory four-month period covers four months preceding the day the termination petition was filed and does not include the day petition was filed). The trial court found that Mother had abandoned the Child by her failure to visit, having visited only once during the pertinent time period.

There is no dispute that Mother only visited the Child once in the four months immediately preceding the filing of the petition to terminate her parental rights. The record reflects that Mother was discharged from her treatment program prior to the pertinent time

period. Mother claimed that she had some transportation issues following her release but did not submit any other evidence establishing her inability to visit throughout the pertinent time period. With these considerations in mind, we affirm the trial court's determination on this ground of termination.

### 2. Substantial noncompliance

A court may terminate a parent's parental rights when the parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To terminate parental rights under this ground, the court "must first find that the plan requirements are reasonable and related to conditions that necessitate foster care placement." *In re Hannah H.*, No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *10 (Tenn. Ct. App. June 10, 2014). "Conditions necessitating foster care placement may include conditions related both to the child's removal and to family reunification." *In re Valentine*, 79 S.W.3d at 547. "The trial court must then find that the noncompliance is substantial." *In re Hannah H.*, 2014 WL 2587397, at *10 (citation omitted). When determining whether a parent's noncompliance with a plan was substantial, the court must do more than "count[ ] up the tasks in the plan to determine whether a certain number have been completed." *In re Carrington H.*, 483 S.W.3d at 537. DCS must show "that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met." *In re M.J.B.*, 140 S.W.3d at 656 (citing *In re Valentine*, 79 S.W.3d at 548–59; *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003)).

The record reflects that Mother completed the majority of the permanency plan requirements. Mother attended an inpatient treatment program, completed the necessary assessments, attended the required classes, regularly submitted to drug screens, currently attends therapy, is employed, provided proof of transportation, and paid child support. However, the main requirements related to the conditions that necessitated removal have yet to be fully completed. Mother has not refrained from drug use and has not established a safe residence for the Child. Mother last tested positive for methamphetamine use in June 2023, just three months prior to the hearing. While Mother testified that she has a proper residence for the Child, her live-in paramour has not been cleared by DCS and also tested positive for THC in June 2023. With these considerations in mind, we affirm the trial court's determination on this ground of termination.

- 8 -

3.      Failure to manifest an ability and willingness to assume custody

Pursuant to Tennessee Code Annotated section 36-1-113(g)(14) parental rights may be terminated when:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires the petitioner to prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14); *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). First, a petitioner must prove that the parent failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. *In re Neveah M.*, 614 S.W.3d at 674. Second, a petitioner must prove that placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. *Id.*

As to the first element, our Supreme Court has instructed as follows:

> [S]ection 36-1-113(g)(14) places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child. If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*Id.* at 677 (citation omitted).

As to the second element, whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," we have explained:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray*, 83 S.W.3d at 732 (footnotes omitted)).

The record reflects that Mother failed to establish an ability to care for the Child. Mother tested positive for methamphetamine use a few months prior to the hearing and had yet to provide evidence establishing a suitable residence for the Child. Mother also did not indicate her ability to care for the Child at the time of the hearing. Instead, she requested additional visitation while she continues to ready herself for his return. From these facts, we agree with the trial court that Mother displayed an overall lack of an ability and willingness to assume legal and physical custody of the Child. The record further supports a finding that placing the Child with her would pose a risk of substantial physical or psychological harm to the Child's welfare given her failure to establish her ability to care for him and her most current drug use. We affirm the trial court's judgment terminating Mother's parental rights on this ground.

### B.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must now consider whether termination of Mother's parental rights was in the best interest of the Child. Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a termination ground, "the interests of the parent and the child diverge" and the court focuses on the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* Because some parental misconduct is redeemable, Tennessee's termination of parental rights statutes recognize "that terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in the best interest analysis "must be proven by a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). After making the underlying factual findings, the court "should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

The statutory best interest factors applicable to this action are as follows:

(i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court. Those factors may include, but are not limited to, the following:

- 10 -

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

(2) When considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.

(3) All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order.

(4) Expert testimony is not required to prove or disprove any factor by any party.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[ ] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[ ] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's). We will group our discussion of the best interest factors "based on the overarching themes within the list of twenty factors" under the circumstances of the case because many of these factors touch on similar factual predicates and involve similar issues. *In re Chayson D.*, No. E2022-00718-COA-R3-PT, 2023 WL 3451538, at *14 (Tenn. Ct. App. May 15, 2023).

We consider first the Child's emotional needs. *See* Tenn. Code Ann. § 36-1-113(i)(1)(A) (concerning the need for stability), (B) (concerning how changes in caretakers affect wellbeing), (D) (concerning the parent-child attachment), (E) (concerning visitation), (H) (concerning attachment to others), (I) (concerning relationships with others), (T) (concerning the parent's fitness and its corresponding impacts). Mother has yet to ready herself for the Child's return, while the Child has remained in the same foster home since May 2022. The Child is bonded with his foster family and was unable to even identify Mother in picture albums. Removal from his current family would be detrimental to his wellbeing.

We turn next to the Child's physical environment and well-being. *See* Tenn. Code Ann. § 36-1-113(i)(1)(O) (involving the parent's prior provision of safe and stable care to any child), (Q) (involving the parent's commitment to having a home that meets the Children's needs), (R) (involving the health and safety of the home). With respect to these factors, Mother's continued drug use and involvement of a paramour that also has drug-related and custodial issues places doubt upon her ability to provide safe and stable care in the near future.

Next, we consider Mother's efforts. *See* Tenn. Code Ann. § 36-1-113(i)(1)(C) (involving the parent's continuity in meeting the Children's needs), (J) (involving the parent's lasting adjustment of circumstances), (K) (involving the parent's use of available resources), (L) (concerning efforts made by DCS); and (M) (concerning the parent's sense of urgency in addressing the circumstances that led to removal). We acknowledge that Mother took great strides in completing the requirements of the permanency plan. Her progress should be commended; however, she has not fully addressed her addiction as evidenced by the latest positive drug screen. Mother has simply failed to establish a lasting adjustment of circumstances.

- 13 -

With regard to support and knowledge of the Child's needs, Tenn. Code Ann. § 36-1-113(i)(1)(S) (addressing the parent providing more than token support), (P) (addressing the parent's understanding of their needs), the record reflects that Mother remitted child support during the custodial episode but was still unable to provide a safe and stable residence for the Child.

The trial court considered all the evidence, weighed the credibility of the witnesses, and concluded that the best interest factors supported termination by clear and convincing evidence. Upon our review of the evidence, we agree with the trial court's assessment and findings. Accordingly, we conclude that clear and convincing evidence in the record supports a determination that termination of Mother's parental rights was in the Child's best interest.

## V.    CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Haleigh F.


_____
JOHN W. McCLARTY, JUDGE